NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**QUINN P. HARRINGTON, OSB #083544**
Assistant United States Attorney
Quinn.Harrington@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:23-cr-85-MO |
| v. | **GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF RELEASE** |
| **DANIEL JAMES JUNK,** | |
| Defendant. | |

**Introduction**

The government requests that the Court immediately set a detention hearing based on Mr. Junk's criminal activity and revoke release and detain Mr. Junk pending sentencing.

Mr. Junk committed new crimes while on release. He targeted individuals, obtained stolen identity information, and sought to steal from new victims. Because there is probable cause that Mr. Junk committed identity theft in violation of 18 U.S.C. § 1028(a)(7), Mr. Junk's release should be revoked because he will be unable to rebut the presumption that no condition

or combination of release conditions will assure that he will not pose a danger or safety of any person. Further, Mr. Junk is unlikely to abide by any condition or combination of conditions of release.

**Factual Background**

**A.     Procedural History**

On April 20, 2023, Daniel Junk pled guilty to one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349. Pursuant to the plea agreement, Junk admitted that from December 2019 to March 2022, Mr. Junk conspired with others to unlawfully gain access to victims' cryptocurrency exchange accounts for the purpose of stealing cryptocurrency. Doc. 12, p. 2. Mr. Junk admitted that he targeted victims whom he believed to have cryptocurrency and illegally accessed victims' accounts, effectively assuming their identity, and would then steal any cryptocurrency. Doc. 12, p. 3. Mr. Junk admitted that he personally obtained no less than $3.5 million in cryptocurrency from victims. Doc. 12, p. 3.

On April 21, 2023, this Court signed an Order Setting Conditions of Release. Doc. 13. The Court ordered that Mr. Junk not commit any offense in violation of federal, state, or local law, among other conditions. Doc. 13. The Court entered additional substance abuse conditions which led to a pretrial violation hearing on December 4, 2023. Doc. 26. At that December 4 hearing, the Court ordered Mr. Junk detained until a December 11, 2023, hearing where the Court released Mr. Junk to a halfway house with additional conditions. Doc. 30.

**B.     Defendant's Criminal Conduct While on Release**

Based in part on an event on November 10, 2023, the government was investigating whether Mr. Junk had reengaged with criminal activity. On December 11, 2023, Mr. Junk consented to the search of his phone and associated online accounts. That search left no doubt:

Mr. Junk committed crimes while on release. Numerous messages, show Mr. Junk targeting victims and engaging in fraudulent behavior to steal. Those messages also show a cavalier attitude toward supervision and the consequences of his actions.

On November 20, 2023, Mr. Junk discussed individuals trying to steal money from him. When asked how he had so much money, he responded, "Did I never tell u[. . .] I'm a hacker."



On December 1, 2023, Mr. Junk used a service on Telegram called "Devil Flood" to target the phone number of ADULT VICTIM 1. People, like Mr. Junk, who use this service are identified as fraudsters, as evidenced by the opening salutation "[wave emoji] Hello, dear fraudsters!"



Fraudsters, like Mr. Junk, who use this service do so as a tactic to distract a victim. If a victim receives constant notifications, messages, or phone calls, the victim will be unable to see real messages that would notify a victim that someone is trying to access an account.

The FBI interviewed ADULT VICTIM 1 who confirmed that ADULT VICTIM 1 owned cryptocurrency and received messages at an alarming rate during this time. ADULT VICTIM 1 declined to provide specific information on how much cryptocurrency she owned or where she stored cryptocurrency because she did not trust anyone after this phone scam.

On December 2, 2023, Mr. Junk paid another Telegram user to obtain the social security number and dates of birth for five people, including ADULT VICTIM 1. ADULT VICTIM 1's information is listed on the first image in the fifth message down. Similarly, the social security number and date of birth that Mr. Junk obtained is the first message sent at 4:04 pm on the second image.

/ / /

/ / /



On the same day Mr. Junk received the means of identification of ADULT VICTIM 1 and others, Mr. Junk told another associate that he was waiting on a laptop so he could "grind" and was trying to "make 6 figs [real quick]" so he could then "chill."

/ / /

/ / /

/ / /

/ / /

**Government's Motion for Revocation**                                             **Page 5**



      Shortly after the December 4th hearing when this Court ordered the detention of Mr. Junk, Mr. Junk sent a message from what appears to be the Pretrial Services office. He asked another user "how far" the user could get on Mr. Junk's "storm" and offered to pay quickly because he was "going to jail quick."

**Government's Motion for Revocation**                                                                               **Page 6**



**Argument**

**A.    There Is Probable Cause that Mr. Junk Violated 18 U.S.C. § 1028(a)(7)**

There is probable cause that Mr. Junk possessed the means of identification of ADULT VICTIM 1 with the intent to commit Wire Fraud, and thus committed a new crime in violation of 18 U.S.C. § 1028(a)(7). The elements from the Ninth Circuit Model Jury Instructions 15.7 are discussed below.

   *1. The defendant knowingly possessed a means of identification of another person*

Mr. Junk possessed the name, date of birth, and social security number of ADULT VICTIM 1. He possessed this information knowingly because he used the name of ADULT

**Government's Motion for Revocation**                                                                                                **Page 7**

VICTIM 1 in his transaction to purchase that victim's date of birth and social security number. "Means of Identification" is defined to specifically include a victim's name, social security, or date of birth. 18 U.S.C. § 1028(7)(A).

   2. *The defendant did so without lawful authority*

Mr. Junk had no authority to possess any identifying information of ADULT VICTIM 1. He obtained the social security number and date of birth by paying an unknown individual on Telegram. Mr. Junk has no lawful reason to possess the identifying information of ADULT VICTIM 1.

   3. *The defendant intended to commit Wire Fraud*

Mr. Junk describes himself as a "hacker." He used another Telegram service to initiate harassing messages to ADULT VICTIM 1. At the time of his possession, he was discussing with others that he was trying to obtain money. Mr. Junk intended to steal from ADULT VICTIM 1 by engaging in fraud, including the use of interstate wires, to steal cryptocurrency from ADULT VICTIM 1. As such, he possessed ADULT VICTIM 1's information with the intent to commit Wire Fraud.

   4. *Possession of the means of identification of another person was in or affected commerce between one state and another state, or between a state of the United States and a foreign country*

Mr. Junk was in Oregon at the time of his possession ADULT VICTIM 1's information and ADULT VICTIM 1 does not reside in Oregon. Mr. Junk obtained ADULT VICTIM 1's information through Telegram, an electronic communication platform that is not based in the State of Oregon. Further, Mr. Junk's use of "Devil Flood" involved the transmission of numerous messages through ADULT VICTIM 1's phone provider. Thus, his possession of ADULT VICTIM 1's information affected interstate commerce.

### B. The Court Should Enter an Order of Revocation and Detention

Because there is probable cause that Mr. Junk committed a federal crime while on release, there is a rebuttable presumption that there are no conditions or combination of conditions that will assure that Mr. Junk will not pose a danger to the community.

Even without that presumption, detention is warranted under 18 U.S.C. § 3148(b)(2). Starting with the second prong, Mr. Junk is unlikely to abide by any condition or combination of conditions of release and should be detained under § 3148(b)(2)(B). Mr. Junk has not taken any conditions of his release seriously. As described above, even when heading to jail, Mr. Junk sought to continue his "storm" of illegal conduct. Pretrial services, even with the harshest of restrictions, would be unable to sufficiently monitor Mr. Junk to ensure that he does not use his hidden stolen cryptocurrency to buy a new phone or computer and engage in the same criminal conduct.

Mr. Junk should also be detained because the factors under § 3148(g) warrant detention and thus detention is warranted under § 3148(b)(2)(A). Although the offense charged is financial and not a crime of violence, the other factors heavily weigh in favor of detention. The weight of the evidence of the underlying charge against Mr. Junk is uncontroverted. He has pled guilty.[1] To the extent that the new criminal charge is relevant in this determination, the evidence for that violation is heavy. Mr. Junk's phone contains clear evidence that he possessed stolen identity information with the intent to commit a crime.

---

[1] Indeed, Mr. Junk is actually on release under 18 U.S.C. § 3143 pending sentencing which requires detention unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or provide a danger to the safety of any person or the community. Because 18 U.S.C. § 3148(b)(2) itself calls for a rebuttable presumption of detention when there is a new crime and is otherwise silent on the standard of proof, the government believes the Court can apply the preponderance standard. *See* , and because the Ninth Circuit is silent as to the legal standard, the government is simply proceeding on the *United States v. Mendez*, No. 121CR00095ADABAM, 2023 WL 3931720, at *4 (E.D. Cal. June 9, 2023) (discussing absence of Ninth Circuit guidance).

The history and characteristics of Mr. Junk also weigh in favor of detention. Mr. Junk seems unable to stop stealing from people. Even when on his way to jail, he sent messages that appear to further criminal conduct. Despite all that Mr. Junk has experienced through this case, including having a search warrant executed at his apartment, pleading guilty, and more, he still seeks to engage in the same criminal conduct.

Finally, Mr. Junk's clearly poses a danger of stealing from people. But past history shows that individuals like Mr. Junk who wield tremendous amounts of stolen cryptocurrency often use that cryptocurrency for physical violence. For just one example, a teenager involved in cryptocurrency theft was kidnapped and held at gunpoint in exchange for a ransom. SIM Swapper Abducted, Beaten, Held for $200k Ransom – Krebs on Security (last accessed January 8, 2024). Mr. Junk was not responsible for that action, but it is typical in the circles where Mr. Junk continues to run.

**Conclusion**

The government respectfully requests a detention hearing as soon as possible. At that hearing, the government asks that the Court find probable cause that Mr. Junk has committed a new crime while on release and revoke release and enter an order of detention pending sentencing.

Dated: January 8, 2024

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Quinn P. Harrington*
QUINN P. HARRINGTON, OSB #083544
Assistant United States Attorney